This appeal arises from a paternity proceeding instituted by the plaintiff's verified petition claiming that the defendant was the father of a child born to the plaintiff on August 29, 1970. A jury found the issues for the plaintiff and found the defendant guilty; judgment was entered for the plaintiff. From that judgment the defendant has appealed and assigns as error the court's rulings on his objections to the presence in the courtroom, during trial, of the child whose paternity was in question and the court's denial of his motion for a mistrial. *Page 534 
In his brief the defendant contends: "During the course of the trial, the child was variously on his mother's lap on the witness stand, in the judge's chambers, or in other parts of the courtroom. The child was in view of the jury for most of the trial. On the first day of the trial, appellant-defendant's counsel, Mr. Aaron,[1]
having protested thrice before to the court about the child's presence, and prejudicial effect on the jury, moved for a mistrial." (Footnote added.) The plaintiff does not agree with the defendant's assertion that the child was present in the courtroom throughout the course of the trial; however, the transcript[2] reveals that four times during the trial the defendant's attorney complained about the child's presence in the courtroom. At the beginning of the trial, the defendant's attorney repeated his previous motion for the exclusion of the child from the courtroom, and the judge requested that the child be brought up to the bench.
In the absence of the jury, the defendant's attorney moved for a mistrial, stating: "Your honor, for the record, I am going to say once more *Page 535 
that I have never had a situation where I find it so difficult to try a case, and to try to protect the interests of my client. It certainly is a case where the jury will be prejudiced to seeing this person, this young little child, his mannerisms, a young child sitting in the lap of the complaining witness, running around the courtroom, hearing him from the back room. I think that I am entitled to a mistrial, your honor." The court denied the motion of the defendant for a mistrial, and the defendant duly took an exception. The child was instructed by the court to stay in the chambers, and then the jury returned to the courtroom. Later, without objection, the child was formally exhibited to the jury for comparison of features to show his resemblance, if any, to the defendant. The plaintiff and the defendant stood next to the child. On one occasion the defendant's attorney interrupted his direct examination of the defendant and suggested that one of his witnesses take care of the child. The plaintiff's attorney agreed and recommended that a mutual acquaintance of both parties look after the child.
The above factual account is all the information that the record contains concerning the presence of the child in the courtroom. On this record we must determine whether the court erred in denying the defendant's motion for a mistrial because of the courtroom presence of the child during trial.
The only briefed assignment of error by the defendant is that the trial judge erred in denying the defendant's motion for a mistrial; therefore, the question before us is whether the extended courtroom presence, during trial, of the child whose paternity is to be determined, as opposed to a limited formal exhibition of the child to show his resemblance vel non to the defendant, constitutes grounds for a mistrial. *Page 536 
"The rule in this state is that a motion for mistrial `should be granted as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it the accused cannot have a fair trial and the whole proceedings are vitiated.' State v. Leopold,110 Conn. 55, 60 . . . . Furthermore, `[t]he trial court has a wide discretion in passing on motions for mistrial.' Ferino v. Palmer, 133 Conn. 463,466 . . . ." State v. Hafner, 168 Conn. 230, 245.
The issue here is whether the trial court abused its discretion in refusing to grant a new trial which the defendant requested because of the claimed prejudicial effect of the child's extended presence in the courtroom during the trial.
It is contended by the defendant that the very nature of a paternity action is such that the putative father is at a disadvantage, and he refers to a law review article which states: "Traditionally, regardless of what evidence is offered on behalf of the reputed father, the odds are overwhelming that the mother will be awarded a favorable verdict by the jury, which is naturally sympathetic to the woman and which has a strong, socially motivated desire to provide for the child." Feirich, "The Paternity Act of 1957, Blessing or Blight," 47 Ill. B.J. 824, 827.
The defendant's position can aptly be described with this quote: "What jury can resist the appeal of a chortling, happy infant, nestled in the arms of its sad-faced mother, as against whoever may be alleged to be the father? And what jury cannot see some slight resemblance in a child with any man, so long as they are at least of the same race? This is a devastating emotional obstacle for any defendant to attempt to overcome . . . ." Gleisser, Juries and Justice, p. 185. *Page 537 
The defendant argues in his brief: "When a child is allowed virtually free reign [sic] in a courtroom for three days, in view of the jury, it is inevitable that that child will be seen as a symbol of the mother's shame, as an unfortunate that deserves to be provided for, and as living proof of the misdeed of the defendant now before them. Only a declaration of a mistrial can offer the defendant a chance for his constitutionally-protected right to a fair trial."
This question of whether an extended presence of the child in the courtroom during trial, as opposed to the limited use of the child as an exhibit to show his resemblance, if any, to the defendant, constitutes grounds for a mistrial is one of first impression in this state. We are guided, however, by Connecticut decisions on the admissibility of the child in evidence. In Shailer v. Bullock, 78 Conn. 65, 66, it was held that the trial court had erred in ruling that a child ten months old could not be exhibited to the jury for the purpose of showing his resemblance to the defendant. The court stated: "In so ruling the court erred. Although the decisions upon this subject in the State courts are not in entire harmony, it is certainly the prevailing general rule in such courts, based, we think, upon good grounds, that such evidence is of probative value, and is admissible for what it may be worth, in proof of paternity, in cases like the one at bar. See the cases upon this subject cited in notes under 166 and 1154 of Wigmore on Ev. (Vols. 1, 2)."
A commentator notes that Shailer, at the very least, circumscribes any possible discretion that a trial judge might have in the matter of permitting an exhibition. He distinguishes it from cases in which the court merely allowed the exhibition of the child. Note, 55 A.L.R.3d 1087, 1109-10. That *Page 538 
comment suggests that Shailer clearly supports the use of that evidence, contrary to the defendant's contention in his brief that the court did not grant that evidence "a ringing endorsement." Shailer was cited with approval in Higley v. Bostick, 79 Conn. 97, 99, which declared that the exhibition of the child was "pertinent evidence" and "may have been of ultimately controlling importance." See also Judway v. Kovacs, 4 Conn. Cir. Ct. 713, 715, in which the court, citing Shailer, considered the admission of a photograph of the child as evidence in a paternity case.
In Connecticut, therefore, we have followed a policy of exhibiting the child to show a resemblance of feature to the putative father. The question before us, however, is the extent of the presence of the child before the jury, i.e., whether a child's courtroom stay in the presence of the jury for an additional period of time beyond his formal exhibition as evidence has such a prejudicial effect on the jury that the defendant cannot receive a fair trial. The prevailing rule is stated in 10 Am.Jur.2d, Bastards, 124: "Whether the child should be permitted to remain in court during trial is largely within the discretion of the trial judge." State v. Jangula, 55 N.D. 580; see also note, 40 A.L.R. 97, 143; note, 95 A.L.R. 314, 317.
This court is well aware of any defendant's plight in attempting to defend himself in this type of action. That predicament has been vernacularly described as a situation in which "nomination is tantamount to election." We recognize the ease with which such a charge may be made and the difficulty of defense thereto. It is our view that the better practice would have been to limit the appearance of the child to a formal exhibit to the jury for the purpose of a showing of the resemblance of the *Page 539 
child, if any, to the putative father, in accordance with the rule adopted in Shailer v. Bullock, supra. On the basis of the record before us, we cannot, however, conclude that the extended presence of the child in the courtroom during trial was of such a character that it should have been apparent to the trial judge that the defendant could not have a fair trial. State v. Hafner, supra.
In conclusion, we hold that the court did not abuse its discretion in denying the defendant's motion for a mistrial.
Another assignment of error has not been briefed by the defendant and is considered abandoned. Waldron v. Raccio, 166 Conn. 608, 609; Multiplastics, Inc. v. Arch Industries, Inc., 166 Conn. 280, 282 n.; Klahr v. Kostopoulos, 138 Conn. 653, 657.
 There is no error.
In this opinion BARBER and SPONZO, Js., concurred.